UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1597

CARIBBEAN PETROLEUM CORPORATION,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Before

Selya and Cyr, Circuit Judges,

and Pettine,* Senior District Judge.

Karin G. Diaz-Toro, with whom Goldman, Antonetti & Cordova was on

brief for petitioner.
Alan D. Greenberg, Attorney, with whom Lois J. Schiffer, Acting

Assistant Attorney General, Randolph L. Hill, Attorney, and Meyer

Scolnick, Assistant Regional Counsel, were on brief for respondent.

July 7, 1994

*Of the District of Rhode Island, sitting by designation.

CYR, Circuit Judge. Petitioner Caribbean Petroleum
CYR, Circuit Judge.

Corporation challenges the discharge permit it was issued by the

United States Environmental Protection Agency (EPA) under the

Clean Water Act. Relying on our recent opinion in Puerto Rico

Sun Oil Co. v. United States EPA, 8 F.3d 73 (1st Cir. 1993),

Caribbean contends that EPA acted arbitrarily and capriciously by

incorporating a water quality certification issued by the Envi-

ronmental Quality Board of the Commonwealth of Puerto Rico (EQB)

which was still undergoing review by the EQB. Finding no error,

we deny the petition for review.

I

BACKGROUND

We had occasion, in Puerto Rico Sun Oil, to survey the

regulatory framework controlling the present appeal:

The Clean Water Act, 33 U.S.C. 1251,
et seq., prohibits the discharge into pro-

tected waters of any pollutant by any person,
id. 1311(a), unless a discharge permit has

been secured from EPA. Id. 1342. The

permitting regime is a hybrid one in which
both EPA and the counterpart state agency
play a role. The precise role depends on
whether EPA has delegated permit issuing
authority to the state; but no such delega-
tion is present here. Puerto Rico is treated
as a state for purposes of the Clean Water
Act, id. 1362(3), and its local agency is

the Environmental Quality Board.

2

To obtain a permit, the applicant must
satisfy a variety of substantive requirements
under the Clean Water Act but, in addition,
no EPA permit can issue unless the state in
which the discharge will occur gives its own
approval (called "certification") or waives
its right to do so. 33 U.S.C. 1341(a)(1).
Further, the state certification may impose
discharge limitations or requirements more
stringent than federal law requires, and
those more stringent obligations are incorpo-
rated into the federal permit as a matter of
course. See generally United States v. Mara-

thon Development Corp., 867 F.2d 96, 99 (1st

Cir. 1989) (describing state role).

Id. at 74-75.

Petitioner Caribbean discharges a large volume of

process and storm water from its Bayamon, Puerto Rico, refining

facility into Las Lajas Creek, a protected waterway designated by

EQB as a drinking water source. Caribbean has been regulated

under the Clean Water Act National Pollution Discharge Elimina-

tion System (NPDES) at its Bayamon operation since it was issued

a five-year permit in 1983. The present controversy surfaced

during the NPDES renewal process, which proceeded as follows:

10/27/88 Caribbean files NPDES renewal
10/27/88
application with EPA.

11/10/88 EPA requests EQB certification.
11/10/88

02/01/89 EQB issues draft certification,
02/01/89
instructing EPA that it "shall be
incorporated into [Caribbean's]
NPDES permit."

04/07/89 Caribbean submits comments to EQB
04/07/89
on draft certification, contending
that its pollutant concentration
standards are unreasonable,
impractical, and unfeasible.

3

05/10/89 EQB issues (substantially
05/10/89
unmodified) final certification.

06/30/89 Caribbean requests EQB
06/30/89
reconsideration of certification
issued 5/10/89.

08/07/89 EPA issues draft NPDES to Caribbean
08/07/89
incorporating the 5/10/89 final
certification.

09/06/89 EPA receives comments on draft
09/06/89
NPDES from Caribbean.

10/13/89 EQB notifies EPA that it is
10/13/89
reviewing the 5/10/89 certification

and requests that EPA delay is-
suance of final NPDES pending re-
view.

09/28/90 EPA issues final NPDES, incorpora-
09/28/90
ting 5/10/89 certification.

At the time the final NPDES was issued on September 28,

1990, EPA considered the May 10, 1989 certification appropriate

for incorporation into the final NPDES because EQB had never

stayed its certification and it therefore remained in effect as a

matter of law. Now, more than five years later, EQB has yet to

act on Caribbean's request for reconsideration of the "final"

certification issued May 10, 1989.

II

DISCUSSION

Caribbean attempts to rest its challenge to the final

NPDES on the coattails of Puerto Rico Sun Oil, by posing the same

generic question involved there: Is it arbitrary and capricious

4

for EPA to incorporate a water quality certification into a final

NPDES while the certification ostensibly is undergoing review by

the local agency? In Puerto Rico Sun Oil, we held that there was

no procedural bar to the incorporation of an EQB certification

which had not been stayed until after the final NPDES issued.

Id. at 77. In a similar vein, we perceive no serious procedural

obstacle in the present case.1 We went on to hold, neverthe-

less, that in the circumstances presented in Puerto Rico Sun Oil,

EPA's decision "made no sense," and amounted to arbitrary and

capricious agency action absent explanation. Id. By contrast,

however, here the only colorable rationality claim raised by

Caribbean rests on a far less substantial basis.

"The scope of review under the 'arbitrary and

capricious' standard is narrow and a court is not to substitute

its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n

v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983). Agency

actions are not to be set aside as arbitrary and capricious, see

Administrative Procedure Act, 5 U.S.C. 706(2)(a), unless they

1Caribbean raises two lackluster procedural claims which
warrant but brief consideration. First, a request from the local
certifying agency that EPA delay issuance of its NPDES pending
reconsideration of the local agency certification is not the
equivalent of a formal stay suspending the legal effect of the
certification, such as EPA issued in the Puerto Rico Sun Oil

proceedings, see Puerto Rico Sun Oil, 8 F.3d at 80. Second,

since the original certification was never stayed, EPA was not
obliged to resort to the procedures in 40 C.F.R. 122.44(d)(3)
to compel EQB either to issue a new certification within 60 days
or waive certification. See Puerto Rico Sun Oil, 8 F.3d at 80.

5

lack a rational basis. See, e.g., Rhode Island Higher Educ.

Assistance Auth. v. Department of Educ., 929 F.2d 844, 855 (1st

Cir. 1991). Like other executive agencies acting within their

respective bailiwicks, EPA is due substantial deference in

interpreting and implementing the Clean Water Act -- "so long as

[its] decisions do not collide directly with substantive statuto-

ry commands and so long as procedural corners are squarely

turned." Puerto Rico Sun Oil, 8 F.3d at 77; see generally Chevron

U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843

(1984). We therefore inquire whether, in the vernacular of

Puerto Rico Sun Oil, the challenged EPA action its issuance of

a final NPDES notwithstanding EQB's request that EPA forestall

its processes in anticipation of further action on Caribbean's

request for review of the EQB certification makes sense.

First, surface appearances aside, several factors

plainly reflect that this case is not of a feather with Puerto

Rico Sun Oil. Not least important is the fact that EPA delayed

its issuance of the Caribbean NPDES for almost a year at EQB's

request; whereas in Puerto Rico Sun Oil EPA incorporated the EQB

certification within two weeks after learning that the

certification was being reconsidered by EQB. Thus, whereas the

timing of the EPA action in Puerto Rico Sun Oil lent to the

impression that an administrative trap had been hastily snapped

shut, there is nothing in the present record to indicate that the

6

eleven and one-half month period EPA afforded EQB to review its

certification was either unreasonable or arbitrary.

Second, the significance of the timing of the EPA

action in Puerto Rico Sun Oil was magnified by a substantive

Clean Water Act monitoring issue not implicated in these proceed-

ings. As a consequence of EPA's precipitous action, the permit-

tee in Puerto Rico Sun Oil was left to cope with a monitoring

methodology unequivocally disavowed by EQB.2 We found that this

whipsaw certification procedure "made no sense." Puerto Rico Sun

Oil, 8 F.3d at 77.3

2The late 1980s witnessed an abortive effort by EQB to alter
its water quality monitoring methodology. For many years EQB
Water Quality Standards had used a "mixing zone" method, which
calls for pollutant concentrations to be measured in the protect-
ed waters into which the permitted discharge occurs. In 1989,
however, EQB issued a draft document that adopted an "end-of-
pipe" (or effluent) approach, whereby pollutant concentrations
are measured at the discharge source, prior to dilution in the
receiving waters. Although this draft document was withdrawn in
1990, the permittee in Puerto Rico Sun Oil had been certified

during the brief reign of the new "effluent monitoring" policy,
and this (presumably more exacting) monitoring methodology had
been written into the certification EQB provided EPA.

3"EQB had used a mixing zone analysis in the past and was
proposing to do so in the future . . . . Yet just as [Sun Oil]
moved to correct the EQB certification, EPA moved even more
swiftly to adopt a final permit based on the EQB certificate that
omitted a mixing zone analysis." Puerto Rico Sun Oil, 8 F.3d at

76.
In sharp contrast, no such ambivalent EQB monitoring method-
ology was at work in this case. Effluent monitoring, see supra

note 2, was the pre-1990 baseline for Caribbean, which, unlike
the permittee in Puerto Rico Sun Oil, discharges into a designat-

ed drinking water source. This much is clear from the face of
the 1983 permit: "Samples taken in compliance with the monitoring
requirements set out above shall be taken at the outfall . . .
prior to discharge to Las Lajas Creek." Additionally,

7

Third, at no time did EQB stay its Caribbean certifica-

tion. In Puerto Rico Sun Oil, however, EQB issued a formal stay,

albeit after EPA had issued its NPDES incorporating the certifi-

cation. Although this court held that the ex post EQB stay was

ineffective, as a matter of procedure under the Clean Water Act,

id. at 80 ("We agree with EPA that the [post-NPDES issuance]

decision of EQB to re-characterize its certification order as

non-final cannot affect the procedural validity of EPA's decision

to grant the permit."), the fact remains that EQB, by staying the

certification in Puerto Rico Sun Oil, took far more timely and

definitive action than was ever taken during the eleven and one-

half months (not to mention the ensuing four years) that EPA

awaited EQB's promised review of the Caribbean certification.

Finally, moving beyond the precedential shadow cast by

Puerto Rico Sun Oil, Caribbean has not identified (nor can we)

any other potential manifestation of arbitrary and capricious

agency conduct on EPA's part. Rather, our review evinces reason-

able agency adherence to appropriate procedures and reasonable

Caribbean's April 7, 1989, comments on EQB's draft certification
requested "interim effluent standards," a further indication that

the substantive standards contained in the certification, not the
monitoring methodology, were driving the conflict between Carib-
bean and EQB. In sum, there is no evidence that the EQB certifi-
cation issued to Caribbean was the product of a bureaucratic
snafu such as infected the permitting process in Puerto Rico Sun

Oil, 8 F.3d at 76 (noting that EQB's certification "must have

appeared a probable candidate for administrative or judicial
revision" as it incorporated effluent standards that had already
been abandoned).

8

accommodation of Caribbean's legitimate interests. We note as a

significant further consideration that should EQB issue Caribbean

a revised certification, EPA may amend its NPDES. See 40 C.F.R.

124.55(b); Puerto Rico Sun Oil, 8 F.3d at 80.4 The availability

of contingency procedures for considering post-issuance

modifications to EQB's certification further reduces the like-

lihood of "arbitrary" EPA action in these circumstances.

III

CONCLUSION

Our conclusion that the challenged EPA action was not

"arbitrary and capricious" is firmly rooted in the record evi-

dence that (1) EPA stayed its hand for more than eleven months to

permit EQB to reconsider its Caribbean certification; (2) yet EQB

neither issued a new certification, nor stayed its original cert-

ification; and (3) the EQB certification incorporated in the

NPDES essentially comported with the effluent monitoring policy

to which Caribbean had been subject ever since it was first

permitted under the Clean Water Act. We decline to visit on EPA

4We need not address the complex issue as to whether any
such changes to Caribbean's NPDES would run afoul of the Clean
Water Act "anti-backsliding" provisions. See 33 U.S.C. 1342(o).

We do note, however, that EPA represents that anti-backsliding is
"unlikely to be an issue in this case" because the modification
of a NPDES to reflect changes in the local agency certification
likely would come within one of several exceptions to section
1342(o). See 33 U.S.C. 1342(o)(2) (prescribing five exceptions

to section 1342(o)).

9

the responsibility for unexplained, if not inexplicable, EQB

delays in undertaking or completing its promised reconsideration,

nor to compromise in the meantime the important public interests

served by the Clean Water Act.

The petition for review is denied.
denied

10